# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JOSE A. JUSINO,
    Plaintiff,

    v.

ANGEL QUIROS, et al.,
    Defendants.

No. 3:21-cv-620 (SRU)

## INITIAL REVIEW ORDER

Plaintiff Jose A. Jusino ("Jusino") is a sentenced inmate currently confined at MacDougall-Walker Correctional Institution.  He has filed a civil rights complaint *pro se* under 42 U.S.C. § 1983 against Angel Quiros, William Mulligan, Daniel Papoosha, Antonio Santiago, and David Maiga.  Doc. No. 1.  The claims asserted in the complaint arise from his alleged retaliatory transfer to phase one of the Security Risk Group ("SRG") program at Northern Correctional Institution ("Northern") in April 2019.  He paid the filing fee to commence this action.  For the reasons set forth below, I dismiss the complaint in part.

## I.  Allegations

Based on his 2009 designation as a member of an SRG, Jusino was transferred to a more restrictive housing status on July 31, 2018.  Doc. No. 1 at 3 ¶ 11; *Jusino v. Rinaldi*, Case No. 3:18-cv-2004 (SRU), Doc. No. 98 at 9 ¶ 38.  In 2018, Jusino filed a civil rights action, *Jusino v. Rinaldi, et al.*,[1] challenging that placement in the SRG program on the ground that it violated the

---

[1] Although Plaintiff does not include the name of the case that he filed in this Court in 2018, the description of the claim asserted in the complaint and the date of the initial review order make clear that the case is *Jusino v. Rinaldi, et al.*, Case No. 3:18-cv-2004 (SRU).  *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) ("A complaint is [] deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint.") (cleaned up).  Additionally, the Court may take judicial notice of publicly filed documents. *See, e.g., Kavowras v. N.Y. Times Co.*, 328 F.3d 50, 57 (2d

Due Process Clause of Fourteenth Amendment.  Doc. No. 1 at 3 ¶ 11; *see* Case No. 3:18-cv-2004 (SRU).  On April 15, 2019, Judge Shea dismissed the complaint filed in that action in part.  *Id.*; *Jusino v. Rinaldi*, Case No. 3:18-cv-2004 (SRU) (Compl., Doc. No. 1 (dated 12/7/18), Initial Review Order, Doc. No. 8 (dated 4/15/19)).[2]

The next day, on April 16, 2019, SRG Coordinator Papoosha issued Jusino a "fabricated" disciplinary report charging him with possession of paperwork demonstrating that he was a member of the security risk group called the Latin Kings.  Doc. No. 1 at 3-4 ¶¶ 11-12.  SRG Coordinator Papoosha requested that Jusino be transferred to Northern Correctional Institution, a "supermax facility," to be placed in phase one of the SRG program.  *Id.* at 4 ¶ 12.

During his eleven-month confinement in phase one, Jusino was subjected to the following conditions: loss of television privileges, restrictions on commissary spending and the retention of personal property, three fifteen-minute showers per week, lack of access to programs and prison employment, exercising in a recreation yard in handcuffs behind his back with seven other inmates for one hour on each week day, confinement in his cell for twenty-three hours per day during the week and twenty-four hours per day on weekends, and lack of interaction with other people. *Id.* at 4 ¶¶ 13, 15.  Due to the limited space in the recreation yard and the fact that Jusino's wrists were handcuffed behind his back, he could not engage in meaningful exercise during the one-hour period.  *Id.* at 5 ¶ 18. Recreating in handcuffs behind his back also caused him to experience pain and injuries that interfered with his daily activities.  *Id.*

---

Cir. 2003) ("Judicial notice may be taken of public filings. . . .") (citations omitted); *Lefkowitz v. Bank of New York*, 676 F. Supp. 2d 229, 249 (S.D.N.Y. 2009) ("Judicial notice may encompass the status of other lawsuits, including in other courts, and the substance of papers filed in those actions.") (citations omitted).
     [2] The case was subsequently transferred to my docket on January 15, 2021.  Doc. No. 82.

II.     **Standard of Review**

Under section 1915A of Title 28 of the United States Code, I must review prisoner civil complaints against governmental actors and "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A. This standard of review "appl[ies] to all civil complaints brought by prisoners against governmental officials or entities regardless of whether the prisoner has paid [a] filing fee." *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004) (cleaned up).

Although detailed allegations are not required to survive initial review, a complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

III.    **Analysis**

Jusino claims that the defendants violated his federal constitutional rights by "deliberate indifference, malicious and sadistic intent, deprivation of the right of bodily liberty, and atypical and significant hardship with retaliation for exercising the right of free speech." Doc. No. 1 at 1 ¶ 1. I liberally construe these allegations as claims that the defendants violated Jusino's First,

Eighth, and Fourteenth Amendment rights.

For relief, Jusino requests compensatory and punitive damages from the defendants in their individual and official capacities. *Id.* at 7. The claims seeking monetary damages for violations of Jusino's federal constitutional rights by the defendants in their official capacities are barred by the Eleventh Amendment and are dismissed under 28 U.S.C. § 1915A(b)(2). *See Kentucky v. Graham*, 473 U.S. 159 (1985) (Eleventh Amendment, which protects the state from suits for monetary relief, also protects state officials sued for damages in their official capacities); *Quern v. Jordan*, 440 U.S. 332, 342 (1979) (Section 1983 does not override a state's Eleventh Amendment immunity).

A plaintiff seeking to recover money damages under section 1983 from a defendant in his or her individual capacity must demonstrate "the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). In *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020), the Second Circuit held that "after *Iqbal*, there is no special rule of liability for supervisors," and instead, "[t]he violation must be established against the supervisory official directly." *Id.* at 618. Therefore, a government or prison official is not personally involved in the violation of a plaintiff's constitutional rights simply "by reason of [the official's] supervision of others who committed the violation." *Id.* at 619. Rather, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id.* at 618 (quoting *Iqbal*, 556 U.S. at 676).

A. <u>Exhaustion</u>

The Prison Litigation Reform Act of 1995 ("PLRA") requires that a plaintiff must "exhaust such administrative remedies as are available" prior to bringing a civil suit challenging

prison conditions.  *Ross v. Blake*, 578 U.S. 632, 635 (2016) (quoting 42 U.S.C. §

1997e(a)).  Because Jusino is incarcerated in a Connecticut correctional facility, the

administrative remedies available to him for resolving administrative issues are provided by the

Connecticut Administrative Directives, written guidelines that establish "the parameters of

operation for Connecticut correctional facilities."  *Nicholson v. Murphy*, No. 02-CV-1815

(MRK), 2003 WL 22909876, at *7 n.2 (D. Conn. Sept. 19, 2003).

Jusino alleges that he informed officials of his complaints through "administrative

remedy" and states that he exhausted such administrative remedies with respect to all defendants,

but he attaches no grievance forms demonstrating that he has done so.  Compl., Doc. 1 at 3, 5 ¶¶

9, 17.  Because it is not clear whether Jusino was able to timely file grievances, whether he

exhausted administrative remedies, or whether an exception to the exhaustion requirement

applies, dismissal for failure to exhaust administrative remedies would be premature at this stage

of the proceedings.  *See, e.g., Ross*, 578 U.S. at 643-44 (discussing various exceptions to the

exhaustion requirement).

B.  <u>First Amendment – Retaliation</u>

Jusino asserts two First Amendment retaliation claims. The first arises from his

placement in the SRG program in 2018 by Director of Security Santiago and the second arises

from his placement in phase one of the SRG program in April 2019.

To plead a First Amendment retaliation claim, an incarcerated plaintiff must plausibly

allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse

action against [him], and (3) that there was a causal connection between the protected speech and

the adverse action."  *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015).

With respect to the second prong, the Second Circuit has instructed district courts to

"'approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official— even those otherwise not rising to the level of a constitutional violation— can be characterized as a constitutionally proscribed retaliatory act.'" *Id*. at 295 (quoting *Davis v. Goord,* 320 F.3d 346, 352 (2d Cir. 2003)).  Thus, prisoners' retaliation claims must be "supported by specific and detailed factual allegations, not stated in wholly conclusory terms." *Id.* (cleaned up).

With respect to the third prong, the plaintiff must state facts "suggesting that the protected conduct was a substantial or motivating factor in the [defendant's] decision to take action against [him]." *Moore v. Peters*, 92 F. Supp. 3d 109, 121 (W.D.N.Y. 2015) (quoting *Burton v. Lynch*, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009)).  "Some of the facts often used to determine retaliatory motive may include (1) temporal proximity between the protected conduct and the alleged retaliatory act, (2) the prisoner's prior good disciplinary record, (3) a finding of not guilty at the disciplinary hearing, and (4) statements by the officials showing motivation." *Ramos v. Semple*, No. 3:18-CV-1459 (VAB), 2019 WL 2422875, at *2 (D. Conn. June 10, 2019).

### 1.  *2018 Placement in SRG Program*

Jusino alleges that Director Santiago retaliated against him for refusing to agree to settle a lawsuit by placing him in the SRG program in 2018 based on an incident that had occurred in 2009.  Doc. No. 1 at 6 ¶ 22.  He offers no other facts in support of this allegation.

Jusino alleges a protected activity, satisfying the first prong.  The Second Circuit has held that "the prosecution and settlement of a lawsuit" is a "constitutionally protected activit[y]." *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003).  He also alleges sufficient facts to satisfy the second.  This Court has previously held that being housed in the significantly harsher SRG unit

plausibly alleges adverse action.  *Caves v. Payne*, No. 3:20-CV-15 (KAD), 2020 WL 1676916, at

*4 (D. Conn. Apr. 6, 2020), *reconsideration denied*, No. 3:20-CV-15 (KAD), 2020 WL 8991722

(D. Conn. May 1, 2020).  But Jusino does not clearly allege facts to suggest that a causal

connection existed between Jusino's alleged refusal to settle a case and his placement in the SRG

program.  Thus, as alleged, the facts do not state a retaliation claim against Director Santiago

pertaining to Jusino's placement in the SRG program in 2018.

Furthermore, even if Jusino had asserted sufficient facts to state a plausible retaliation

claim, I conclude that such a claim is not properly joined in this action.  Under the Federal Rules

of Civil Procedure, joinder of multiple defendants is only permitted in one action only if "any

right to relief is asserted against them jointly, severally, or in the alternative with respect to or

arising out of the same transaction, occurrence, or series of transactions and occurrences, and any

question of law or fact common to all defendants will arise in the action."  *See* Fed. R. Civ. P.

20(a)(2).  A court may *sua sponte* drop a party or sever a claim where appropriate.  Fed. R. Civ.

P. 21.

Here, the allegation pertaining to Jusino's alleged placement in the SRG program in 2018

does not arise out of the same occurrence as the allegations pertaining to Jusino's placement in

the SRG program at Northern in April 2019.  Thus, Jusino's claim arising from his 2018

placement is improperly joined pursuant to Rule 20(a)(2).  Moreover, Jusino concedes that he is

already litigating claims related to his re-designation or continued designation as an SRG

member and his placement in the SRG program in 2018 in *Jusino v. Rinaldi*, *at al.*, Case No.

3:18-cv-2004 (SRU).  *See* Doc. No. 1 at 3 ¶ 11; *see also Jusino v. Rinaldi*, *at al.*, Case No. 3:18-

cv-2004 (SRU), Doc. No. 98 (second amended complaint).  Although Jusino characterizes the

2018 lawsuit as raising only Fourteenth Amendment due process claims pertaining to his

placement in the SRG program in July 2018 and his continued confinement in the SRG program at least through the end of 2018, the second amended complaint filed in that action includes allegations that his 2018 placement, which involved more restrictive conditions of confinement, constituted retaliation for grievances and lawsuits filed by him. *See Jusino v. Rinaldi, et al.*, Case No. 3:18-cv-2004 (SRU), Doc. No. 98, at 16 ¶ 63 (third cause of action). There, the allegations are asserted against multiple Department of Correction officials, including Director Santiago. *Id.* at 3-6, 9, 16 ¶¶ 6-24, 38-42, 63. Jusino may consider including such allegations in an amended pleading in his other case.

Accordingly, I dismiss without prejudice the allegation that in 2018, Director Santiago retaliated against Jusino by placing him in the SRG program because he refused to settle a prior lawsuit for failure to state a plausible First Amendment retaliation claim and improper joinder in this action. *See* 28 U.S.C. § 1915A(b)(1); Fed. R. Civ. P. 20(a)(2); Fed. R. Civ. P. 21.

### 2. *2019 Placement in SRG Program*

Next, Jusino contends that in mid-June 2019, SRG Coordinator Papoosha issued him a false disciplinary report charging him with Latin Kings affiliation and recommended his transfer to the SRG program at Northern, and that Director of Security Santiago and Director of Programs and Treatment Maiga authorized his transfer to and placement in the SRG program in retaliation for his having filed a lawsuit against correctional officials, *Jusino v. Rinaldi, et al.*, Case No. 3:18-cv-2004 (SRU).

Jusino satisfies the first prong. The filing of a lawsuit constitutes a protected First Amendment activity. *See Espinal v. Goord*, 558 F.3d 119, 128–29 (2d Cir. 2009) ("There is no dispute that Espinal's earlier federal lawsuit, filed in June 1998 and dismissed in June 1999, was a protected activity.") (citation omitted).

Jusino also satisfies the second, identifying two types of adverse conduct: the issuance of a disciplinary report by SRG Coordinator Papoosha and his placement in a more restrictive program at Northern.  Both types of conduct could be considered adverse.  For example, in *Gill v. Pidlypchak*, the Second Circuit concluded that the plaintiff sufficiently alleged an adverse action based on the defendants' filing of false misbehavior reports in response to the plaintiff's prior grievance submissions.  389 F.3d 379, 384 (2d Cir. 2004).  This Court has also held that a plaintiff plausibly alleged that his placement and continued confinement in the SRG Program, requiring him to endure "significantly harsher and more restrictive conditions" than in general population, "constituted adverse action."  *Trimmier v. Cook*, No. 3:20-CV-396 (KAD), 2020 WL 5231300, at *9 (D. Conn. Sept. 2, 2020).

Jusino similarly satisfies the third prong, plausibly alleging causation with respect to several defendants.  Jusino contends that on April 16, 2019 when SRG Coordinator Papoosha issued the disciplinary report for Latin Kings SRG affiliation, he was aware that on the previous day Judge Shea had filed a ruling in *Jusino v. Rinaldi, et al.*, Case No. 3:18-cv-2004 (SRU), permitting some of the claims asserted against Department of Correction employees, including himself, to proceed.  Given the temporal proximity between the filing of the ruling in Jusino's lawsuit and the issuance of the disciplinary report and Jusino's placement in the SRG program at Northern, the causal connection element has plausibly been met.  *See, e.g., Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) ("One way a plaintiff can establish a causal connection is by 'showing that protected activity was close in time to the adverse action.'") (quoting *Espinal*, 558 F.3d at 129).

Accordingly, I will permit this First Amendment retaliation claim to proceed against SRG Coordinator Papoosha and Directors Santiago and Maiga for further development of the record.

On the other hand, Jusino's allegations do not suffice for supervisory liability for defendants Mulligan and Quiros. Jusino suggests that Deputy Commissioner Quiros and District Administrator Mulligan may have become aware of the retaliatory disciplinary report issued by Papoosha and his transfer to and placement in the SRG program at Northern by Directors Santiago and Maiga after the fact. Doc. No. 1 at 6 ¶ 21. This allegation, however, does not demonstrate the direct personal involvement in the alleged retaliatory conduct required by *Tangreti,* by which "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution'" to state a claim under section 1983. 983 F.3d at 618 (quoting *Iqbal*, 556 U.S. at 676).

Accordingly, the First Amendment retaliation claim asserted against defendants Mulligan and Quiros is dismissed without prejudice. *See* 28 U.S.C. § 1915A(b)(1).

C. <u>Eighth Amendment – Conditions of Confinement</u>

Jusino describes various conditions under which he was confined in the SRG program at Northern for eleven months. He contends that the conditions were overly harsh and unconstitutional.

The Eighth Amendment prohibits "cruel and unusual punishments," U.S. Const. amend. VIII, including protecting prisoners from "cruel and unusual punishment" at the hands of prison officials. *See Wilson v. Seiter*, 501 U.S. 294, 296–97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). However, in the context of a prisoner's conditions of confinement, conditions that are "restrictive or even harsh" do not violate the Eighth Amendment because "they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Even with that limitation, prison officials may not maintain conditions which inflict "unnecessary and wanton pain" or which result in the "serious deprivation of basic

human needs . . . or the minimal civilized measure of life's necessities." *Id.*

To state a claim of deliberate indifference to health or safety due to unconstitutional conditions of confinement, an objective and a subjective element must be met. To meet the objective element, an inmate must allege that he was incarcerated under a condition or a combination of conditions that resulted in a "sufficiently serious" deprivation of a life necessity or a "human need[]" or that posed "a substantial risk of serious harm" to his health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Rhodes,* 452 U.S. at 347. The Supreme Court has identified the following basic human needs or life necessities of an inmate: food, clothing, shelter, medical care, warmth, safety, sanitary living conditions, and exercise. *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989); *Rhodes,* 452 U.S. at 348. To meet the subjective element, an inmate must allege that the defendants possessed culpable intent; that is, the officials knew that the inmate faced a "substantial risk" to his or her health or safety and "disregard[ed] that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. Thus, an allegation of "mere negligence" is insufficient. *Id.* at 835.

### 1. *Solitary Confinement*

Jusino alleges that, for eleven months, he was confined to twenty-three hours of lockdown during the week and forty-eight hours of lockdown on the weekends, and that he was not provided any physical interaction with fellow inmates except for an hour of exercise five days per week. Doc. No. 1 at 4 (¶ 15).

The Second Circuit has not held that solitary confinement, as a matter of law, violates the Eighth Amendment. Rather, the Circuit considers both the duration and conditions of an inmate's segregation when evaluating the liberty interest of a due process claim, holding that the

"duration of [solitary] confinement is a distinct factor bearing on atypicality" that "must be carefully considered." *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000). There are no "precise calipers to measure the severity of the hardship" of solitary confinement. *Id.* at 231. Nevertheless, Jusino's allegation that he spent eleven months— or 334 days— in near-total solitary confinement is within the ambit of a protected liberty interest in the Second Circuit. *See Kalwasinski v. Morse*, 201 F.3d 103, 106 (2d Cir. 1999) (180 days); *Colon,* 215 F.3d at 231 (305 days); *Fludd v. Fischer*, 568 F. App'x 70, 73 (2d Cir. 2014) (summary order) (305 days).

Other Courts of Appeal have expressly held that prolonged solitary confinement in conditions similar to those alleged by Jusino violate the Eighth Amendment. *See Porter v. Clarke*, 923 F.3d 348, 353 (4th Cir. 2019) (spending "for years, between 23 and 24 hours a day alone, in a small . . . cell with no access to congregate religious, educational, or social programming—pose[s] a substantial risk of serious psychological and emotional harm"); *Williams v. Sec'y Pa. Dep't of Corr.*, 848 F.3d 549 (3d Cir. 2017) ("the deprivations of protracted solitary confinement so exceed the typical deprivations of imprisonment as to be the kind of atypical, significant deprivation . . . which [can] create a liberty interest"); *Palakovic v. Wetzel*, 854 F.3d 209, 226 (describing the "extremely serious and potentially dire consequences of lengthy exposure to the conditions of solitary confinement"); *see also Gallina v. Wilkinson,* 988 F.3d 137, 155 (2d Cir. 2021) (Pooler, J. dissenting). I agree.

In another case, I evaluated the substantially similar conditions of confinement of a "special circumstances high security" inmate also at Northern, Richard Reynolds, who alleged that he was subject to an average of 21 to 22 hours of confinement each day. *See Reynolds v. Arnone*, 402 F. Supp. 3d 3, 20 (D. Conn. 2019), *aff'd in part, vacated in part, remanded sub nom. Reynolds v. Quiros*, 990 F.3d 286 (2d Cir. 2021). There, I reviewed the scientific literature

addressing the harmful effects of prolonged periods of isolation and reasoned that Reynolds'

solitary confinement of indefinite duration "g[a]ve rise to the harmful effects described by the

growing body of research on social isolation and mental health." *Id.* (citing to, *inter alia*, Craig

Haney, *Mental Health Issues in Long-Term Solitary and "Supermax" Confinement*, 49 Crime &

Delinquency 124, 132 (2003) (quotation omitted)).  On that basis, I concluded that *Reynolds*

satisfied the objective element of an Eighth Amendment claim.  *Id.*

Here, Jusino alleges sufficiently similar facts: confinement of twenty-three hours per day,

without an opportunity to interact with other people, except for during the one-hour permitted for

exercise.  Indeed, Jusino alleges conditions more extreme than those Reynolds experienced; in

contrast, Reynolds was permitted two fifteen-minute meals outside of his cell, two hours of

recreation six days per week, and social visits with family members.  *See Reynolds,* 402 F. Supp.

3d at 13.  Thus, Jusino alleges sufficient facts for the objective element of an Eighth Amendment

claim.

Moreover, although Jusino does not do so in the complaint in this case, I take judicial

notice of his previous allegation that he suffers from "multiple psychological disabilit[ies]" and

"abnormal brain structure and function," and is thus at heightened risk of harm from such

conditions of confinement.  Case No. 3:18-cv-2004 (SRU), Doc. No. 98 at 4 ¶ 9.   This and other

courts have held that inmates with mental health issues are "at particularly high risk for suffering

very serious or severe injury to their mental health," such that the risk of their confinement is

"plainly unreasonable." *Madrid v. Gomez*, 889 F. Supp. 1146, 1264 (N.D. Cal. 1995) (citation

omitted); *see also Walker v. Quiros*, No. 3:11-CV-00082 MPS, 2014 WL 7404550, at *5 (D.

Conn. Sept. 30, 2014) (reasoning that mentally ill inmate's claims that his mental illness was

exacerbated "could conceivably rise to the level of posing an unreasonable risk of serious

damage to his health or a deprivation of basic human needs").

In *Reynolds,* I also found that the subjective element satisfied because the defendants had "acted with deliberate indifference to a substantial risk of harm by continuing to house him in social isolation." *Reynolds*, 402 F. Supp. 3d at 21.  There, I concluded that prison officials at Northern were "aware of the mental health risks associated with prolonged isolation," citing *inter alia* to evidence of DOC policies "mandat[ing] that special circumstances inmates be assessed by a mental health professional one month after their initial placement and every three months thereafter." *Id.* at 22.

Here, I similarly conclude that the subjective element is plausibly alleged because the complaint alleges that defendants acted with the same deliberate indifference to Jusino's mental health by confining him to near-total social isolation.

Nevertheless, based on the Second Circuit's subsequent holding in *Tangreti,* I depart from my decision in *Reynolds* in one significant respect.  983 F.3d at 619.  Although Jusino asserts his solitary confinement claim against all defendants, he does not state a plausible claim against all defendants.  He has not alleged that any defendant other than District Administrator Mulligan was aware of the conditions under which he was confined at Northern.  Although Jusino affirmatively states that Mulligan was "informed of the violation through administrative remedy," Doc. No. 1 at 6 ¶ 17, he provides merely the conclusory allegations that defendants Santiago, Maiga, Papoosha and Quiros "created a policy or custom under which unconstitutional practices occurred or allowed the continuance of such a policy or custom" and "exhibited deliberate indifference" to his rights "by failing to act on information indicating that unconstitutional acts were occurring," *id.* at 5 ¶ 16.  He simply parrots two of the categories the Second Circuit identified in *Colon v. Coughlin* for demonstrating personal involvement of the

14

supervisors.  58 F.3d 865, 873 (2d Cir. 1995).  The theories of supervisory liability delineated

in *Colon*, however, are no longer controlling following the Second Circuit's decision in *Tangreti*.

*See, e.g.*, *Stone v. Annucci*, No. 20-CV-1326 (RA), 2021 WL 4463033, at *7 (S.D.N.Y. Sept. 28,

2021) (Although in *Tangreti*, the Second Circuit "did not expressly state" that it was

"overruling *Colon*, it made clear that plaintiffs seeking to hold supervisors liable 'cannot rely on

a separate test of liability specific to supervisors'—i.e., exactly what the five-factor *Colon* test

was.") (quoting *Tangreti*, 983 F.3d at 619).

      After *Tangreti*, Jusino must allege that the officials personally "kn[e]w of and

disregard[ed] an excessive risk to inmate health or safety; the official must both [have been]

aware of facts from which the inference could be drawn that a substantial risk of serious harm

exists, and he must also draw the inference."  983 at 618-19.  But Jusino has failed to assert facts

to suggest the direct personal involvement of SRG Coordinator Papoosha, Director of Security

Santiago, Director of Programs and Treatment Maiga, or Deputy Commissioner Quiros in the

alleged deprivation of his Eighth Amendment rights during his confinement at Northern.

      Accordingly, I will permit this Eighth Amendment conditions of confinement claim to

proceed against defendant Mulligan for further development of the record and dismiss the claims

against Papoosha, Santiago, Maiga, and Quiros without prejudice.  *See* 28 U.S.C. § 1915A(b)(1).

## 2.  *Exercise*

      Jusino alleges a serious deprivation of the basic human need for exercise.  In *McCray v.

Lee*, 963 F.3d 110 (2d Cir. 2020), the Second Circuit observed that a prisoner's right "to a

meaningful opportunity for physical exercise had been clearly established" since 1985.  *Id.* at

120 (citing *Williams v. Greifinger*, 97 F.3d 699, 704 (2d Cir. 1996); *Anderson v. Coughlin*, 757

F.2d 33, 35 (2d Cir. 1985)).

Jusino alleges that he was unable to engage in meaningful exercise during the one-hour period he was permitted to exercise each day during the week. Compl., Doc 1 at 4 ¶ 14. During these brief opportunities, he was handcuffed behind his back and there were seven other inmates in the recreation cage with him. *Id.* at 4 ¶¶ 13-15. From the handcuffs and the lack of exercise, he suffered pain and unspecified injuries. *Id.* at 4 ¶ 13. He remained in phase one of the SRG program for eleven months. *Id.* at 4 ¶ 15.

Jusino further asserts that through his submission of requests and inmate grievances, District Administrator Mulligan became aware of the fact that he was unable to exercise in handcuffs behind his back in a cage with seven other inmates but failed to but failed to take steps to remedy this serious deprivation of a basic human need. *Id.* at 5 ¶ 17. It may be inferred from this allegation that District Administrator Mulligan exhibited deliberate indifference to an ongoing condition that posed a serious risk of harm to Jusino's health and safety. The same, however, cannot be inferred with regard to Papoosha, Santiago, Maiga, and Quiros for the same reasons outlined with regard to Jusino's solitary confinement claim.

Accordingly, I will permit the Eighth Amendment deprivation of exercise claim to proceed against defendant Mulligan in his individual capacity. But the Eighth Amendment right to exercise claim as asserted against defendants Papoosha, Santiago, Maiga, and Quiros is dismissed without prejudice. *See* 28 U.S.C. § 1915A(b)(1).

3.  *Other Conditions*

To the extent that Jusino alleges that he endured the certain harsh conditions during his confinement in the SRG program— that he could not hold a prison job, engage in unspecified programming, watch television, and was limited to three showers per week; and that imitations were placed on the time he could spend outside of his cell, how much money he could spend in

the commissary, and what items of personal property he could retain in his cell— precedent

obligates me to conclude that these conditions do not *per se* constitute deprivations of a basic

human needs. *See, e.g., Pagan v. Dougherty*, No. 3:18-cv-1668 (VLB), 2019 WL 2616975, at *6

(D. Conn. June 26, 2019) (allegations that, during confinement in SRG program, a prisoner was

subjected to limitations on telephone use, visits from friends and family, eligibility for parole,

access to educational and vocational services, and showers and was confined in

his cell for twenty-three hours per day did not support an objective component of an Eighth

Amendment claim for inhumane conditions of confinement) (citing cases); *Vega v. Rell*, No. 09-

CV-0737, 2011 WL 2471295, at *25 (D. Conn. June 21, 2011) (It is well established that

"[i]nmates have no constitutional right to purchase items from the prison commissary") (citing

cases); *Lewis v. Sieminski*, No. 3:08-CV-728 JCH, 2010 WL 3827991, at *6 (D. Conn. Sept. 22,

2010) ("An inmate, however, has no constitutional right to a job in prison.") (citations omitted).

Consequently, Jusino's non-exercise allegations fail to meet the objective component of an

Eighth Amendment conditions claim.

Accordingly, the Eighth Amendment claim arising from Jusino's denial of the

opportunity to hold a prison job, engage in programming, spend as much as he liked outside of

his cell, make unlimited purchases in the prison commissary, shower on a daily basis, retain

certain personal property, and watch television is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

D. Fourteenth Amendment – Due Process

Jusino alleges that SRG Coordinator Papoosha issued him a disciplinary report for SRG

affiliation on April 16, 2019, and based on the charged conduct, requested that he be transferred

to Northern to be placed in phase one of the SRG program.  Jusino asserts further that prison

officials did transfer him to Northern and that Directors Santiago and Maiga authorized his

17

placement in the SRG program.  I liberally construe Jusino's allegations to assert a claim of a violation of his right to procedural due process under the Fourteenth Amendment.

To state a procedural due process claim, a plaintiff must allege that the "[d]efendants deprived him of a cognizable interest in life, liberty, or property . . . without affording him constitutionally sufficient process." *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) (cleaned up).  But the issuance of an allegedly false disciplinary report in and of itself does not state a claim of a deprivation of due process. *See Velez v. Burge*, 483 F. App'x 626, 628 (2d Cir. 2012) (summary order) ("[I]t is well settled that a 'prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest.'") (quoting *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir. 1986) and citing *Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir. 1997) ("[A] prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report.").

The Supreme Court has held that when a prison official charges an inmate with a disciplinary infraction, the inmate has a protected liberty interest requiring procedural due process only if the sanctions, including confinement in segregation, imposed by the official pursuant to a determination of guilt on the charge causes the inmate to suffer an "atypical and significant hardship" in comparison to "the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484-86 (1995) (holding Conner's confinement in disciplinary segregation for thirty days "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest").  The Second Circuit has instructed district courts to consider both the nature of the conditions under which the inmate was confined in segregation as well as the duration of exposure to those conditions when assessing the severity and atypicality

of the hardship. *See Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) ("in determining

whether [an inmate] endured an atypical and significant hardship" a district court should

consider the duration of the inmate's confinement in segregation and "the extent to which the

conditions [in] . . . segregation differ from other routine . . . conditions" in general population.")

(cleaned up).

Here, although Jusino mentions a deprivation of liberty and atypical and significant

hardships, he asserts no facts regarding the disposition of the disciplinary report or any sanctions

that may have been imposed. Absent any allegation that a prison official found Jusino guilty of

the disciplinary charge of SRG affiliation and imposed penalties or sanctions in the form of

confinement in punitive segregation pursuant to that finding of guilt, Jusino has not stated a

claim that any defendant deprived him of a liberty interest that required procedural due process.

Accordingly, Jusino's Fourteenth Amendment procedural due process claim is dismissed

without prejudice. *See* 28 U.S.C. § 1915A(b)(1).

In *Wilkinson v. Austin*, 545 U.S. 209 (2005), the Supreme Court considered a due process

claim asserted by inmates who had been classified for placement in a high security state prison

based on considerations of safety and security, rather than for disciplinary reasons. *Id.* at 223-24.

In determining whether the inmates had a liberty interest in avoiding confinement in the very

restrictive, maximum security prison for an indefinite period, the Court applied the standard set

forth in *Sandin*. *Id.* at 223. The Court concluded that the restrictive conditions "taken together []

impose[d] an atypical and significant hardship" on inmates and gave "rise to a liberty interest in

their avoidance." *Id.* at 224. The Second Circuit has also held that inmates possess a liberty

interest in avoiding lengthy and harsh conditions of solitary confinement. *E.g.*, *Colon v.*

*Howard*, 215 F.3d 227, 231 (2d Cir. 2000).

Here, Jusino alleges that he remained in phase one of the SRG program for eleven months and endured various conditions that were harsh and more restrictive than the conditions in general population.  Jusino has plausibly alleged that he had a liberty interest in avoiding placement in the SRG program without due process.

If an inmate is placed in a restrictive housing unit or program for administrative reasons or due to safety or security concerns, the inmate is entitled only to "some notice of the charges against him and an opportunity to present his views [either orally or in writing] to the prison official charged with deciding" the matter.  *Hewitt v. Helms*, 459 U.S. 460, 476 (1983).  By contrast, for a placement made for a disciplinary or punitive purpose, an inmate is entitled to advance written notice of the charge, adequate time to prepare a defense, a written statement of the reasons for the disciplinary action taken, and a limited opportunity to present witnesses and evidence in his defense.  *See Wolff v. McDonnell*, 418 U.S. 539, 561-70 (1974). In *Wilkinson*, the Supreme Court concluded that prison officials had classified the plaintiffs for indefinite placement in a high security state prison for safety and security, rather than disciplinary reasons, and that *Hewitt* governed the process to be provided to them.  545 U.S. at 228-30.

Jusino suggests that no safety or security concerns justified his placement in the SRG program and that the placement was punitive.  Assuming the truth of those allegations, the procedural protections in *Wolff*, rather than *Hewitt* would apply.  Jusino does not, however, address whether he was afforded an opportunity to be heard, either informally or at a hearing, prior to his placement in the SRG program.

Accordingly, I dismiss this Fourteenth Amendment due process claim without prejudice. I permit Jusino leave to file amended complaint to clarify his procedural due process claim as it relates to his placement in phase one of the SRG program at Northern in April 2019.

IV.     **Conclusion**

It is hereby ordered that:

**(1)**     The claims seeking punitive and compensatory damages for violations of Jusino's

federal constitutional rights by the defendants in their official capacities are **DISMISSED** with

prejudice under 28 U.S.C. § 1915A(b)(2).  The First Amendment retaliation claim arising from

the issuance of the April 16, 2019 disciplinary report and Jusino's placement in the SRG

program at Northern asserted against defendants Quiros and Mulligan and the Eighth

Amendment claim related to the following restrictions on Jusino's opportunities to: hold a prison

job, engage in unspecified programming, spend time outside of his cell, purchase items in the

commissary, shower on a daily basis, retain certain personal property, and watch television

during his confinement in the SRG program at Northern, as asserted against all defendants are

**DISMISSED** with prejudice and the Fourteenth Amendment procedural due process claims

associated with the issuance of the disciplinary report to Jusino by SRG Coordinator Papoosha

on April 16, 2019 and Jusino's placement in phase one of the SRG program at Northern in

connection with the issuance of the report and the Eighth Amendment conditions of confinement

claim related to a deprivation of exercise asserted against defendants Santiago, Maiga, Papoosha

and Quiros are **DISMISSED** without prejudice.

The First Amendment retaliation claim asserted against Director Santiago that arises from

Jusino's placement in the SRG program in 2018 is **SEVERED** and **DISMISSED** without

prejudice pursuant to 28 U.S.C. § 1915A(b)(1); Fed. R. Civ. P. 20(a)(2); Fed. R. Civ. P. 21.

Jusino is not precluded from pursuing that claim in *Jusino v. Rinaldi, et al.*, Case No. 3:18-CV-

2004 (SRU).

The First Amendment retaliation claim arising from the issuance of the April 16, 2019

disciplinary report and Jusino's placement in the SRG program at Northern in connection with

the issuance of the report will **PROCEED** against defendants Papoosha, Maiga, and Santiago in their individual capacities.  The Eighth Amendment conditions of confinement claims related to solitary confinement and deprivation of exercise will **PROCEED** against defendant Mulligan in his individual capacity.

I will permit Jusino thirty (30) days to file an amended complaint to: (1) reassert his Fourteenth Amendment procedural due process claim as it relates to his placement in phase one of the SRG program at Northern in April 2019, and any amended complaint should to clarify whether he was afforded a hearing or opportunity to be heard prior to the placement; and (2) reassert his claim of procedural due process arising from the issuance of the disciplinary report for SRG affiliation by SRG Coordinator Papoosha on April 16, 2019 to the extent that he can allege a deprivation of a liberty interest in connection any sanctions that may have been imposed pursuant to a finding that he was guilty of the charge.  If Jusino can assert facts to demonstrate the direct personal involvement of SRG Coordinator Papoosha, Director of Security Santiago, Director of Programs and Treatment Maiga, or Deputy Commissioner, now Commissioner Quiros in his prolonged detention in solitary confinement or deprivation of his right to engage in meaningful exercise during his confinement in the SRG program at Northern, he may also reassert that claim in an amended complaint.

**(2)**     Because Jusino paid the filing fee in this case, he is responsible for serving the complaint on the defendants, SRG Coordinator Papoosha, Director of Security Santiago, District Administrator Mulligan, and Director of Programs and Treatment Maiga, in their individual capacities, pursuant to Rule 4 of the Federal Rules of Civil Procedure.  The Clerk is directed to mail Jusino instructions for service of the complaint on these defendants in their individual capacities, together with four copies of the complaint, four copies of this order, four blank Notice

of Lawsuit forms, and eight blank Waiver of Service of Summons forms.

(3)     Within (30) thirty days of the date of this order, Jusino shall serve a copy of the complaint on SRG Coordinator Papoosha, Director of Security Santiago, District Administrator Mulligan, and Director of Programs and Treatment Maiga in their individual capacities by mailing: 1 Notice of Lawsuit form, 2 Waiver of Service of Summons forms, 1 copy of the Complaint, and 1 copy of this Order to each defendant at his work address or other address where that defendant may be found.  *See* Rule 4(d)(1), Fed. R. Civ. P. Jusino shall file a notice with the Clerk indicating the date on which he mailed the Notice of Lawsuit and Waiver of Services of Summons forms and copies of the complaint to the defendants in their individual capacities and shall also forward the signed Waivers of Service of Summons forms that he receives from the defendants in their individual capacities to the Clerk.

(4)     Defendants Mulligan, Papoosha, Santiago, and Maiga shall file their response to the complaint, either an answer or motion to dismiss, within thirty (30) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above.  They may also include all defenses permitted by the Federal Rules.

(5)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within six months (180 days) from the date of this order.  Discovery requests need not be filed with the Court.

(6)     All motions for summary judgment shall be filed within seven months (210 days) from the date of this order.

(7)     If Jusino changes his address at any time during the litigation of this case, Local Rule 83.1(c)2 provides that he MUST notify the Court.  Failure to do so can result in the

dismissal of the case.  Jusino should write PLEASE NOTE MY NEW ADDRESS on the notice.

Jusino should also notify the defendants or the attorney for the defendants of his new address.

**(8)** The Clerk shall immediately enter the District of Connecticut Standing Order Re:

Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall

send a copy of the Standing Order to the parties.

**(9)** Jusino shall utilize the Prisoner Efiling Program when filing documents with the

Court. Jusino is advised that the Program may be used only to file documents with the Court.

Local Court Rule 5(f) provides that discovery requests are not to be filed with the Court.

Therefore, discovery requests must be served on defendants' counsel by regular mail.

**(10)** **The Clerk shall** send a courtesy copy of the complaint and this order to the

Connecticut Attorney General and to the Department of Correction Legal Affairs Unit.

So ordered.

Dated at Bridgeport, Connecticut, this 3rd day of November 2021.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge